```
___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
            COUNSEL/PARTIES OF RECORD

       · MAY 1 1 2012

     CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOHN CERVANTES,

      Plaintiff,

v.                                                    3:11-cv-00242-RCJ-VPC

EMERALD CASCADE RESTAURANT                    **ORDER**
SYSTEMS, INC., d.b.a., JACK-IN-THE BOX,
INC.,

      Defendant.

_____

Currently before the Court is Defendant Emerald Cascade Restaurant System's Motion for Summary Judgment (#20). The Court heard oral argument on April 2, 2012.

## BACKGROUND

On April 7, 2011, Plaintiff John Cervantes a Caucasian, filed a complaint in this Court alleging that he was discriminated against on the basis of race and national origin in violation of Title VII by his former employer, Defendant Emerald Cascade Restaurant Systems, Inc. (Am. Compl. (#3) at ¶ 12). Plaintiff alleges the following. After being hired as an assistant manager in April of 2008, he was discriminated against because he was Caucasian and the staff "was over 90% Hispanic." (Id. at ¶¶ 2, 4-5); (Charge of Discrimination (#20-3)).

He was denied assistant manager training because his initial training, which should have been completed in eight weeks, was not completed after nearly seven months. (Decl. of Pl. (#24) at 1). Shortly after Plaintiff was hired, his store manager, Pablo Gomez, was transferred. (Dep. of Pl. (#20-2) at 19). Plaintiff expressed his concern to an area manager about the unequal treatment he was receiving and that he would not finish

1  training by the time Pablo transferred.  (*Id.*)  Although the area manager assured Plaintiff

2  that his training would be completed, it was not.  (*Id.*)  His supervisor, manager Esther

3  Rios, would not allow him to work mornings with her to finish training because he "wasn't

4  Mexican." (Decl. of Pl. (#24) at 3).  Plaintiff was scheduled to complete his training by

5  taking the "Assistant Manager Training Class" in October or November of 2008, but did not

6  take the class because of his subsequent incarceration.  (Decl. of Caleb Sayler (#20-4) at ¶

7  15).

8         Plaintiff never received any bonuses, even though he was told that he would be

9  "immediately eligible" for bonuses upon hiring.  (Decl. of Pl. (#24) at 1).  Defendant stopped

10  giving these minimal bonuses out during the time that Plaintiff worked for Defendant.

11  (Decl. of Caleb Sayler (#20-4) at ¶ 15).  Plaintiff would have been eligible for these

12  bonuses once he finished training for assistant manager.  (*Id.*)

13         Plaintiff felt that he was subjected to disparaging comments and denied the support

14  of staff because he was not Hispanic.  (Charge of Discrimination (#20-3) at 26).  Esther

15  Rios would not give him the combination to the safe because only "Mexicans can have the

16  combination." (Decl. of Pl. (#24) at 1).  On September 11, 2008, Esther Rios refused to

17  raise the American Flag because she could not "raise the Mexican flag, so why fly that

18  one." (*Id.* at 2).  When Plaintiff complained of the unequal treatment to Pablo Gomez,

19  Pablo told him that the employees did not respect him because he had "to earn their

20  respect" and because "he was not Mexican." (*Id.*)  Plaintiff complained to several store and

21  area managers about how he felt that he "was being ousted because [he] did not fit in as a

22  Mexican family member." (*Id.*)  None of the area managers recall him complaining about

23  discriminatory treatment.  *See* (Decl. of Caleb Sayler (#20-4) at ¶ 25); (Dep. of Chris

24  Pennington (#20-3) at 12); (Dep.of John Thompson (#20-3) at 17).  After these complaints,

25  Plaintiff was approached by store manager Martin Gomez who told him that he should go

26  to another store "because he was not Mexican." (Decl. of Pl. (#24) at 3).  Martin informed

27  him that either the managers were going to force him to quit, or they were going to get him

28  fired because he would never be "part of the family." (Charge of Discrimination (#20-3) at

2

1   27).

2   Plaintiff claims that he decided to quit his job after he left work on October 14, 2008

3   but could not communicate this decision to his superiors because the very next day he was

4   arrested for a DUI, extradited to Georgia, and incarcerated until October of 2009 for

5   violating his parole. (Decl. of Pl. (#24) at 3). Defendant terminated Plaintiff for job

6   abandonment on October 20, 2008, after not having heard from Plaintiff since October 16.

7   (Letter of Termination (#20-5) at 18). After his release, Plaintiff moved to Massachusetts

8   where he was offered a job as an assistant manager at a bar with a salary of $30,000.

9   (Dep. of Pl. (#20-2) at 31). However, Plaintiff turned down the job because he wanted to

10   attend school to study film-making. (Id.)

11   While incarcerated, Plaintiff filed a charge ("Charge of Discrimination") with the

12   Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights

13   Commission alleging discrimination in violation of Title VII on October 29, 2008. (Charge

14   of Discrimination (#20-3) at 26). On that same date, Plaintiff filed out a remedy request

15   ("Remedy Request") seeking back pay, front pay for the next twenty years, compensation

16   for unpaid and future bonuses, reimbursement of medical and travel expenses, and pain

17   and suffering. (Remedy Request (#20-3) at 29-34). The EEOC ended its investigation in

18   August of 2009. (Am. Compl. (#3) at ¶ 1).

19   Plaintiff filed his Amended Complaint on April 7, 2011, alleging disparate treatment

20   in violation of Title VII. (Am. Comp. (#3)). Defendant moved for summary judgment on

21   January 9, 2012. (Mot. for Summ. J. (#20)). Plaintiff filed his opposition on February 15,

22   2012. (Opp'n (#24)). Defendant filed its reply on February 29, 2012. (Reply (#26)).

23   **LEGAL STANDARD**

24   Summary judgment is appropriate when "there is no genuine dispute as to any

25   material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

26   56(a). Material facts are "facts that might affect the outcome of the suit under governing

27   law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91

28   L.Ed.2d 202 (1986). A material fact is "genuine" if there is sufficient evidence for a

1 reasonable jury to return a verdict for the nonmoving party. *Id.* In reviewing a motion for

2 summary judgment, the court views the evidence in the light most favorable to the non-

3 moving party. *Bagdadi v. Nazar*, 84 F3.d 1194, 1197 (9th Cir. 1996).

4         Where the moving party bears the burden of proof at trial, it must present evidence

5 "that would entitle it to a directed verdict if the evidence went uncontroverted at trial."

6 *Celotex Corp. V. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265

7 (1986). When the non-moving party bears the burden of proof at trial, the moving party

8 must either present evidence negating an essential element of the non-moving party's

9 claims, or show that the non-moving party failed to present sufficient evidence to establish

10 an essential element. *Id.* at 325, 106 S. Ct. at 2553-54.

11         In addition, the moving party bears the initial burden of identifying the portions of the

12 pleadings and evidence that the party believes demonstrate the absence of any genuine

13 issue of material fact. *Id.* at 323; 106 S. Ct. at 2553. Any assertion of a lack of genuine

14 issue of material fact must be supported by either specific references to the record, by

15 showing that the record is absent of facts supporting the non-moving party's claim, or by

16 showing that the non-moving party "cannot produce admissible evidence to support the

17 fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

18         Once the moving party has met its burden of proof, the burden shifts to the non-

19 moving party to prove that a genuine issue for trial exists. *Matushita Elec. Indus. v. Zenith*

20 *Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However,

21 if the moving party does not meet its initial burden, summary judgment must be denied and

22 the court does not need to consider the non-moving party's evidence. *Adickes v. S.H.*

23 *Kress & Co.,* 398 U.S. 144, 159-60, 90 S. Ct. 1598, 1609-10 (1970).

24         To establish the existence of a factual dispute, the non-moving party must not rely

25 upon "conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040,

26 1045 (9th Cir. 1989). Rather, the non-moving party must demonstrate that there is

27 "evidence on which the jury could reasonably find for" them. *Anderson*, 477 U.S. at 252,

28 106 S. Ct. at 2512. "Where the record taken as a whole could not lead a rational trier of

1   fact to find for the nonmoving party, there is no genuine issue for trial." *Matushita*, 475

2   U.S. at 587, 106 S. Ct. at 1356.

3                                              **DISCUSSION**

**I. Failure to Exhaust Administrative Remedies**

4

5          This Court grants the motion for summary judgment on Plaintiff's retaliation claim

6   because he has failed to exhaust his administrative remedies.  Title VII claimants are

7   required to exhaust their administrative remedies by filing a timely charge with the EEOC

8   before bringing a civil claim, and failure to do so is a jurisdictional defect.  *McDonnell*

9   *Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S. Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

10  However, "the absence of a perfect 'fit' between the administrative charge and the judicial

11  complaint is . . . not fatal to judicial review."  *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.

12  1981).  Given that Title VII claimants are often lay persons, the language of the EEOC

13  charges must be liberally construed.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th

14  Cir. 2002).  As such, civil complaints may raise any claim that is "like or reasonably related"

15  to the allegations in the EEOC charge, including claims that were either part of the EEOC's

16  actual investigation or could reasonably have been expected to grow from such

17  investigation.  *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).

18         Plaintiff has not exhausted his administrative remedies on his retaliation claim.  To

19  allege a Title VII retaliation claim, Plaintiff must assert that: (1) he engaged in a protected

20  activity; (2) suffered an adverse employment action; and (3) that there was a causal

21  connection between the protected activity and the adverse action.  *Tarin v. Cnty. of L.A.*,

22  123 F.3d 1259, 1264 (9th Cir. 1997), *superseded by statute on other grounds as stated in*

23  *Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010).  Although Plaintiff's Charge of

24  Discrimination and Remedy Request list adverse actions that occurred after his complaints

25  to management, there are no allegations that the adverse actions were in response to the

26  complaints he made that establish a causal connection between his complaint and the

27  adverse actions.  *See* (Charge of Discrimination (#20-3) at 26-27); (Remedy Request (#20-

28  3) at 29-34).  Furthermore, Plaintiff did not check the retaliation box on his Charge of

Discrimination. (Charge of Discrimination (#20-3) at 26). As such, an investigation of retaliation could not reasonably have been expected to grow out of the EEOC investigaton. *See Vasquez v. Cnty. of L.A.,* 349 F.3d 634, 645 (9th Cir. 2003) (holding that an employee failed to exhaust his administrative remedies for his retaliation claim when his EEOC charge only included allegations of disparate treatment and harassment and he did not check the retaliation box). Accordingly, this Court grants the motion for summary judgment on Plaintiff's retaliation claim because he has failed to exhaust his administrative remedies.

## II. Claims not Pled in the Complaint

This Court will not consider Plaintiff's separate claims for hostile work environment, or constructive discharge because he raised these claims for the first time in his opposition to the motion for summary judgment. *See* (Opp'n (#24) at 5-6); (Am. Compl. (#3)). Although Fed. R. Civ. P. 8(a) allows liberal pleading, it requires that the complaint give "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.) Inc.,* 457 F.3d 963, 968 (9th Cir. 2006). Generally, parties may not raise new claims not contained in the complaint at summary judgment. *Id.* at 969 (holding that the district court properly refused to consider a disability discrimination claim raised for the first time in opposition to summary judgment because it failed to give adequate notice to the defendants of the claims at issue); *see also Wasco Prod. Inc. v. Southwall Tech., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) (holding that the district court properly refused to consider a claim raised in opposition to a motion for summary judgment because "summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Plaintiff's complaint alleges that "Defendant violated Title VII . . . in that Defendant intentionally discriminated against Plaintiff with respect to the terms, conditions and privileges of his employment based upon his race and national origin." (Am. Compl. (#3) at ¶ 12). Plaintiff does not allege that the work environment was hostile, or that he was constructively discharged or terminated. (*Id.*) Accordingly, this Court will not consider Plaintiff's hostile work environment or constructive discharge claims as these were not pled

1  in his complaint.  However, Plaintiff may present the evidence he believes supports these

2  claims to prove his pled Title VII disparate treatment claim and alleged damages.

3  **III.  Title VII Disparate Treatment**

4  **A. Direct Evidence**

5        This Court will deny the motion for summary judgment on Plaintiff's Title VII

6  disparate treatment claim because Plaintiff has presented direct evidence of discrimination.

7  Title VII prohibits employers from discriminating on the basis of "race, color, religion, sex,

8  or national origin."  42 U.S.C. § 2000e-2(a)(1).  The standard to overcome summary

9  judgment in a Title VII case is very low because most of the evidence presented will raise

10  credibility issues, and, therefore, the plaintiff's right to a jury trial is zealously guarded.

11  *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008).[1]  A plaintiff may establish a

12  prima facie case of Title VII discrimination by either offering direct evidence of employer

13  discrimination that resulted in an adverse employment action, or by establishing a

14  presumption of discrimination under the four-fact test set forth in *McDonnell Douglas Corp.,*

15  411 U.S. at 802, 93 S. Ct. At 1824.[2]  *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111,

16  121, 105 S. Ct. 613, 621-22, 83 L.Ed.2d 523 (1985).  Where a plaintiff presents direct

17  evidence of discrimination, the *McDonnell Douglas* test is inapplicable.  *Id.*  "Direct

18  evidence is evidence, which, if believed, proves the fact of the discriminatory animus

19  without inference or presumption."  *Coghlan v. Am. Seafoods, Inc.,* 413 F.3d 1090, 1095

20  (9th Cir. 2005) (quotations omitted).

21        Plaintiff has presented direct evidence of discriminatory animus.  He presented

22

---

23  [1]Defendant discusses in depth Plaintiff's past criminal and employment records in an effort to
demonstrate his lack of credibility. *See* (Mot. for Summ. J. (#20) at 1-6).  However, such evidence is

24  irrelevant when considering a motion for summary judgment. *See Reeves v. Sanderson Plumbing Prod.,
Inc.,* 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (holding that Title VII claims

25  carry a burden of production, not persuasion, and "can involve no credibility assessment").  As such, this
Court does not consider this evidence.

26
        [2]An employment discrimination claim under Nevada law is treated the same as a federal Title

27  VII claim.  *See Pope v. Motel 6,* 114 P.3d 277, 280 (Nev. 2005) (stating that Nevada often looks to
federal law for guidance because Nevada's anti-discrimination statutes are similar to Title VII);

28  *Apececeche v. White Pine Cnty.,* 615 P.2d 975, 976-77 (Nev. 1980) (applying the burden shifting analysis
from *McDonnell Douglas*).

7

1  evidence that manager Esther Rios treated him differently for being a Caucasian when she

2  refused to let him work mornings with her to finish training because "he was not Mexican,"

3  and would not give him the combination to the safe because only "Mexicans can have the

4  combination." (Decl. of Pl. (#24) at 1).  Similarly, he presented evidence that store

5  manager Martin Gomez treated him differently for being a Caucasian when Gomez told

6  Plaintiff that he should go to another store "because he was not Mexican." (*Id.* at 3).

7  Finally, Plaintiff's allegation that he "felt that [he] was being ousted because [he] did not fit

8  in as a Mexican family member," *see (id.* at 2), is factually supported by Martin Gomez's

9  statement that Plaintiff was either going to get fired or be forced to quit because he "would

10 never be part of the family," *see* (Charge of Discrimination (#20-3) at 27), as direct

11 evidence of discriminatory animus against Plaintiff.  Given that the standard to overcome

12 summary judgment in a Title VII case is very low, *see Davis,* 520 F.3d at 1089, Plaintiff has

13 established a prima facie case with the use of direct evidence. · Accordingly, this Court

14 denies the motion for summary judgment on Plaintiff's Title VII disparate treatment claim.

15      **B. Pretext**

16      Defendant argues that summary judgment is appropriate even if the Plaintiff

17 establishes a prima facie case because Plaintiff cannot establish pretext.  (Mot. for Summ.

18 J. (#20) at 15-19).  Once the plaintiff has presented a prima facie case of discrimination,

19 the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory

20 reason for the allegedly discriminatory adverse employment action.  *E.E.O.C. v. Boeing*

21 *Co.,* 577 F.3d 1044, 1049 (9th Cir. 2009). The plaintiff then has a chance to prove, by a

22 preponderance of the evidence, that the employer's legitimate reason was pretextual.  *Id.*

23 This may done "either by directly persuading the court that a discriminatory reason more

24 than likely motivated the employer or indirectly by showing that the employer's proffered

25 reason is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248,

26 256, 101 S. Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).  Where there may be both legitimate

27 and discriminatory motives behind an adverse employment action, the plaintiff only needs

28 to present evidence that a discriminatory motive was a reason behind the employment

action to prove pretext. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S. Ct. 1775, 1790, 104 L.Ed.2d 268 (1989). However, plaintiffs do not have to present additional evidence of pretext to overcome summary judgment when the evidence presented for the prima facie case creates a triable issue of fact as to the true motive behind the employer's proffered reasons. *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1117 (9th Cir. 2000).

Plaintiff has presented direct evidence that creates a triable issue of fact as to the true motive behind Defendant's proffered reasons. Plaintiff has presented evidence that manager Esther Rios would not let him work mornings with her to finish training because "he was not Mexican." (Decl. of Pl. (#24) at 1). This creates a triable issue of fact as to whether he was denied training solely because of a change in management, as Defendant argues. *See* (Mot. for Summ. J. (#20) at 17-18). Furthermore, Plaintiff has presented evidence that store manager Martin Gomez told him to transfer to another store because "he was not Mexican," and that Plaintiff was either going to be forced to quit, or they were going to get him fired. (Decl. of Pl. (#24) at 3); (Mot. for Summ. J. (#20) Ex. 15). This creates a triable issue of fact as to whether he was terminated solely because of job abandonment, as Defendant claims. *See* (Reply (#26) at 2-3). As such, Plaintiff can prove pretext. Accordingly, this Court denies the motion for summary judgment on Plaintiff's Title VII disparate treatment claim.

## IV. Remedy Request

This Court grants the motion for summary judgment denying Plaintiff's requested front and back pay because Defendant is not liable for compensatory damages during the time period that Plaintiff was unable to work due to his incarceration, and Plaintiff has failed to mitigate his wage loss. If a court finds that an employer violated Title VII, it may order "such affirmative action as may be appropriate, which may include . . . back pay," and front pay. 42 U.S.C. § 2000e-5(g)(1). A court may also award non-pecuniary compensatory damages, emotional distress damages, nominal damages, and punitive damages. 42 U.S.C. § 1981a(b). While back pay refers to damages suffered as a result of the prior termination or adverse employment action, front pay is a prospective damage award meant

1  to compensate the plaintiff in lieu of reinstatement until the plaintiff finds adequate

2  replaceable employment.  *Caudle v. Bristol Optical Co.*, 224 F.3d 1014, 1020 (9th Cir.

3  2000).

4          Plaintiff may not recover back pay for the time period that he was unable to work

5  due to his incarceration.  *See Canova v. Nat'l Labor Relations Bd.*, 708 F.2d 1498, 1505

6  (9th Cir. 1983) (holding that an "employer is not liable for back pay during the periods that

7  an improperly discharged employee is unavailable to work due to a disability").  Because

8  back pay is meant to restore the plaintiff to the position he would have been in but for the

9  discriminatory conduct, "a plaintiff should not be able to receive back pay for a period when

10 he was unable to work for reasons unrelated to the defendant's conduct."  *E.E.O.C. v.*

11 *Timeless Inv., Inc.*, 734 F.Supp.2d 1035, 1059 (E.D. Cal. 2003).  By Plaintiff's own

12 admission, he was incarcerated for over a year after he was terminated by Defendant

13 because of a DUI he received that was unrelated to his work as assistant manager.  (Opp'n

14 (#24) Ex. 2 at 3).  As such, he is not entitled to receive back pay for the time period that he

15 was unavailable to work.

16         In addition, Plaintiff is not entitled to either front or back pay because he failed to

17 mitigate his wage loss.  Title VII claimants are required to "mitigate damages by seeking

18 alternative employment with 'reasonable diligence.'"  *Caudle*, 224 F.3d at 1020; *see also* 42

19 U.S.C. § 2000e-5(g)(1).  This obligation extends to both back and front pay.  *Caudle*, 224

20 F.3d at 1020; *see also Gotthardt v. Nat'l R.R. Passengers Corp.*, 191 F.3d 1148, 1159 (9th

21 Cir. 1999) (holding that front pay is a temporary remedy which "does not contemplate that a

22 plaintiff will sit idly by and be compensated for doing nothing").  Defendant has the burden

23 of proof to prove that: (1) Plaintiff could have avoided his wage loss by accepting a

24 different, suitable available position for which Plaintiff was qualified; and (2) Plaintiff did not

25 reasonably and diligently seek such a position.  *Sias v. City Demonstration Agency*, 588

26 F.2d 692, 696 (9th Cir. 1978).  Failure to accept a job substantially equivalent to his former

27 employment forfeits the right to back pay. *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1169

28 (D. Ariz. 2007) (quoting *Brady v. Thurston Manor Lines, Co.*, 753 F.2d 1269, 1273 (4th Cir.

10

1    1985)).

2        Defendant has presented proof that Plaintiff was offered another job as an assistant

3    manager of a bar in Massachusetts at a similar salary to that which he made while working

4    for Defendant, and that Plaintiff refused the job because he wanted to go to school to study

5    film-making.  (Dep. of Pl. (#20-2) at 31).   As such, Plaintiff has failed to mitigate his wage

6    loss and is not entitled to his requested remedies of front and back pay.  Accordingly, this

7    Court grants the motion for summary judgment denying Plaintiff's requested remedies of

8    front and back pay.  Plaintiff is still entitled to pursue his damages for emotional distress

9    and attorneys' fees.

10   **CONCLUSION**

11       For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary

12   Judgment (#20) is GRANTED as to Plaintiff's retaliation, hostile work environment, and

13   constructive discharge claims, and as to Plaintiff's request for front and back pay.  IT IS

14   FURTHER ORDERED that Defendant's Motion for Summary Judgment (#20) is DENIED

15   as to Plaintiff's Title VII disparate treatment claim.

16

    DATED:  This 11th day of May, 2012.

17

18

19   _____
United States District Judge

20

21

22

23

24

25

26

27

28

11