

FILED _____   _____ RECEIVED
_____ ENTERED   _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JUL 2 5 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOHN CERVANTES,                    )
                                   )        3:11-cv-00242-VPC
        Plaintiff,                 )
                                   )
    v.                             )        **ORDER**
                                   )
EMERALD CASCADE RESTAURANT         )
SYSTEMS, INC., d.b.a., JACK-IN-THE-)
BOX, INC., a foreign corporation,  )
                                   )
        Defendants.                )        July 25, 2013
                                   )

Before the court is plaintiff John Cervantes's motion for attorney's fees pursuant to Fed.R.Civ.P. 54(d)(2) and 42 U.S.C. § 1988 (#77). Defendant Emerald Cascade Restaurant Systems, Inc., d.b.a. Jack-in-the-Box, Inc., opposed plaintiff's motion (#81). Plaintiff filed no reply. The court has thoroughly reviewed the record and plaintiff's itemization of fees, and awards plaintiff $15,000.00 in attorney's fees.

## I. FACTUAL & PROCEDURAL BACKGROUND

On April 7, 2011, plaintiff filed an amended complaint pursuant to Title VII of the Civil Rights Act of 1964, alleging that defendant intentionally discriminated against plaintiff with respect to the terms, conditions and privileges of his employment based upon his race and/or national origin (#3, p. 2). The case proceeded through discovery. On May 11, 2012, the court granted defendant's motion for summary judgment as to plaintiff's retaliation, hostile work environment and constructive discharge claims, and plaintiff's requests for front and back pay (#29, pp. 6, 11). The court denied

defendant's motion for summary judgment as to plaintiff's Title VII disparate treatment claim. *Id.* at 8.

On November 12, 2012, the case went to trial before a jury. At trial, the evidence established that in April 2009, plaintiff began working as a first assistant manager at Jack-in-the-Box in Fallon, Nevada. Tr. 166-67.[1] He was paid a salary of $32,000.00 per year. *Id.* Plaintiff testified that he received inadequate training and was subject to unequal treatment because he was not Mexican. Tr. 128-30. Plaintiff also testified that three Jack-in-the-Box employees discriminated against him and/or made disparaging comments towards him because he was not Mexican. Tr. 131-133, 139, 197-98. On October 14, 2008, plaintiff did not report to Jack-in-the-Box for his scheduled shift, because he had been arrested for a DUI. Tr. 202-03. When plaintiff failed to show up for work, the store manager called him, but could not reach him. Tr. 329-30. Defendant sent plaintiff a letter asking him to contact the store, and explained that if he failed to do so, defendant would assume that plaintiff had abandoned his job. Tr. 330-31. Plaintiff never responded to the letter. *Id.* On October 19, 2008, the area manager filled out a termination form, stating that it appeared that plaintiff had abandoned his job. Tr. 330. Plaintiff was initially incarcerated at the Churchill County Jail, but was extradited to Cobb County, Georgia, for a probation violation and remained in prison until October 14, 2009. Tr. 202-05.

After a three-day trial, the jury returned a verdict in plaintiff's favor, finding that plaintiff's origin and/or race were the sole reason and/or a motivating factor for the defendant to deny plaintiff training, promotions and/or terminate his employment (#61). The jury awarded plaintiff $53.98 in compensatory damages and $500,000.00 in punitive damages. *Id.* On March 8, 2013, the court

---

[1] Tr. refers to the transcript of proceedings, split between Docket Numbers 71, 72, and 73.

reduced the punitive damages award to $5,398.00, which is 100 times the compensatory damages award (#74).

## II. DISCUSSION & ANALYSIS

### A. Relevant Law

In a Title VII suit, the court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). Defendant agrees that plaintiff is the "prevailing party" for purposes of attorney's fees (#81, p. 1). However, defendant contends that plaintiff's requested fee award is grossly unreasonable in light of the result plaintiff obtained. *Id.* at 2.

Calculation of reasonable attorney's fees is a two-step process. First, the court computes the "lodestar" figure by multiplying the number of hours the attorney reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433.[2] Second, the court decides whether to increase or decrease the lodestar amount based upon the *Kerr* factors that are not already subsumed in the lodestar calculation. *Fischer*, 213 F.3d at 1119 (referring to *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)). Local Rules of Civil Practice ("LR") 54-16(b)(3) codify the twelve *Kerr* factors, as follows:

(A) The results obtained and the amount involved;
(B) The time and labor required;
(C) The novelty and difficulty of the questions involved;
(D) The skill requisite to perform the legal service properly;
(E) The preclusion of other employment by the attorney due to acceptance of the case;
(F) The customary fee;

---

[2] Although *Hensley* involved a claim for attorney's fees pursuant to 42 U.S.C. § 1988, the Court noted that the attorney's fees provision in §1988 was patterned upon the attorney's fees provision in Title VII of the Civil Rights Act of 1964, and that the standards for awarding fees under both statutes is generally the same. 461 U.S. at 433 n. 7.

(G) Whether the fee is fixed or contingent;
(H) The time limitations imposed by the client or the circumstances;
(I)  The experience, reputation, and ability of the attorney(s);
(J)  The undesirability of the case, if any;
(K) The nature and length of the professional relationship with the client; and
(L) Awards in similar cases.

In reviewing a motion for attorney's fees, the court will rely on its own experience to determine whether the amount requested is reasonable and based on the lodestar calculation. *See Ilick v. Miller*, 68 F.Supp.2d 1169, 1176 (D.Nev.1999) (noting that the court may rely on its own discretion in determining reasonableness of attorney's requested fee award); *Hensley*, 461 U.S. at 437 (the district court has discretion in determining the amount of a fee award). Where a party has "limited" success, the attorney's fees "must be reduced to reflect the limited degree of his success. The district court must determine the extent to which the [party] prevailed and adjust the requested fee accordingly." *LeMaire v. Maass*, 12 F.3d 1444, 1461 (9th Cir. 1993); *see Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996).

**B.  Analysis**

Plaintiff's counsel, Mr. Jeff Dickerson, states that he necessarily spent 224.1 hours on this litigation, and that a reasonable hourly rate for his services is $450.00 per hour (#77, p. 4).  Mr. Dickerson requests $100,845.00 in attorney's fees.  *Id.*  The court has carefully reviewed Mr. Dickerson's itemization of fees with regard to the factors set forth in LR 54-16(b)(3), and finds that this request is excessive.

**a.  Step One**

**i.  Hours Reasonably Expended**

A fee applicant must provide a reasonable itemization and description of the work performed. *See* LR 54-16(b)(1).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.  In addition, the court should exclude hours that

were not reasonably expended because they were "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

In his declaration, Mr. Dickerson includes a billing summary in which he lists the dates upon which he provided legal services in connection with this case, a cursory summary of the legal services performed, and the number of hours for each task (#77, pp. 5-11). Mr. Dickerson claims he expended a total of 224.1 hours on this case. *Id.* at 11. Defendant objects to this total, arguing that a number of plaintiff's billing entries are too vague to ascertain whether the time spent was necessary, and that many of the billing entries contain unreasonable or overinflated time in relation to the nature of the task. The court has engaged in its own review of Mr. Dickerson's fee application, and also considers defendant's specific objections below.

a) *Plaintiff's Complaint & Amended Complaint (1/7/11, 4/5/11, 4/7/11):*

Plaintiff requests 4.5 hours to draft, finalize and file his complaint and amended complaint (#77, p. 5). However, plaintiff's complaint consists of two pages and contains minimal factual allegations. Plaintiff's amended complaint merely corrects the defendant's name (#3). The court finds that as an experienced employment law practitioner, Mr. Dickerson should have expended no more than ninety minutes to draft these simple documents. Accordingly, the court deducts 3.0 hours from the total requested time.

b) *Review Minutes of Court-Calendar CMC (5/25/11):*

Plaintiff requests 0.3 hours (eighteen minutes) to review the court's standard case management instructions (#77, p. 5). Defendant objects to this time allotment, stating that it should take Mr. Dickerson no longer than one minute to review a two sentence minute order (#81, p. 6). The court notes that its instructions are not two sentences, but

three pages in length.  In any event, the court finds that allotting eighteen minutes to review the court's basic instructions is excessive.  Accordingly, the court deducts 0.1 hours (six minutes) from the total requested time.

c)  *Stipulated Discovery Plan & Scheduling Order (6/1/11 & 6/3/11)*:

Plaintiff requests 1.4 hours to prepare and file the parties' stipulated discovery plan and scheduling order (#77, p. 6).  Defendant objects to this time allotment, stating that the preparation of this document is an administrative task that should take no longer than fifteen minutes.  Defendant also states that filing is an administrative task and does not constitute compensable legal time (#81, pp. 6-7).  The court allots 0.3 hours (eighteen minutes) towards preparation of the stipulated discovery plan and scheduling order, and deducts the remaining 1.1 hours (one hour and six minutes) from the total requested time.

d)  *Review & Calendar Order Re: ENE (6/30/11)*:

Plaintiff requests 0.4 hours (24 minutes) to review the court's standard early neutral evaluation ("ENE") instructions and calendar the ENE (#77, p. 6).  The court notes that Mr. Dickerson has attended many ENE sessions and is familiar with these rules.  Accordingly, the court deducts 0.3 hours (eighteen minutes) from the total requested time and allocates 0.1 hours (six minutes) for this task.

e)  *Prepare & Finalize Plaintiff's Supplemental Disclosures (7/27/11)*:

Plaintiff requests 0.8 hours (48 minutes) to prepare and finalize his supplemental disclosure (#77, p. 7).  This supplemental disclosure consists of a single sentence listing plaintiff's sister as a witness (#81-2, p. 18).  Accordingly, the court deducts 0.7 hours (forty-two minutes) from the total requested time and allocates 0.1 hours (six minutes) for this task.

f) *Attend Case Management Conference (7/29/11)*:

Plaintiff requests 1.0 hour to attend the court's July 29, 2011, case management conference. However, this conference lasted approximately two minutes (#16). Accordingly, the court deducts 0.5 hours (thirty minutes) from the total requested time and allocates 0.5 hours (thirty minutes).

g) *Attend ENE Conference (8/26/11)*:

Plaintiff requests 5.0 hours to attend the August 26, 2011, early neutral evaluation conference (#77, p. 7). However, this conference lasted approximately one hour and seven minutes (#17). The court deducts 3.0 hours from the total requested time.

h) *Prepare & Finalize Plaintiff's Supplemental Disclosures (9/12/11)*:

Plaintiff requests 0.5 hours to prepare and finalize his supplemental disclosure (#77, p. 8). This supplemental disclosure consists of a single sentence listing Dawn Defesi as a witness (#81-2, p. 21). The court deducts 0.4 hours (24 minutes) from the total requested time.

i) *Prepare for & Attend Hearing Re: Motion for Summary Judgment (4/2/12)*:

Plaintiff requests 5.0 hours to prepare for and attend the April 2, 2012, hearing. Plaintiff does not differentiate between preparation hours and attendance hours. The court notes that the hearing began at 9:15 a.m. and concluded at 9:32 a.m. (#28). The court allots 1.5 hours for this hearing, and deducts 3.5 hours from the total requested time.

j) *Review Defendant's Motion in Limine Re: Net Worth (10/5/12)*:

Plaintiff requests 1.0 hour to review defendant's motion in limine related to net worth (#77, p. 10). However, this two-page motion does not contain complex subject matter (#45). Mr. Dickerson should have been able to review the motion and read the cited case

law within thirty minutes.  The court deducts 0.5 hours (thirty minutes) from the total requested time.

k) *Review email from client; legal research; response (11/2/12-11/5/12) & Miscellaneous Client Emails/Correspondence*:

Plaintiff requests 5.0 hours for unspecified emails and legal research approximately two weeks before trial (#77, p. 10).  Plaintiff also requests a total of 17.5 hours for multiple generic entries related to client emails and correspondence, in which Mr. Dickerson allocates between twelve minutes and 1.5 hours for each of these entries.  However, Mr. Dickerson does not state the purpose of these communications.  In short, although Mr. Dickerson is not required to record in "great detail how each minute of his time was expended," *Hensley*, 461 U.S. at 437 n. 12, he should have at least identified the general subject matter of each of these communications.  *Id.*  The court acknowledges that Mr. Dickerson communicated with his client on many occasions, but without at least some additional detail, the court is unable to determine whether these hours were reasonably expended or were "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.  Accordingly, the court allocates 0.1 hour (six minutes) for each of these entries (40 entries) for a total time of 4.0 hours, and deducts 18.5 hours.

l) *Preparation for Early Neutral Evaluation (8/19/11 and 8/-/11)*:

Plaintiff requests 4.2 hours to prepare his ENE statement and 1.0 hour to review defendant's ENE statement.  The court is familiar with Mr. Dickerson's standard ENE statements submitted routinely in employment discrimination cases, and they are typically no more than two or three pages.  The court deducts 3.2 hours and allocates one hour for this task.  The court also notes that opposing counsel's ENE statements are confidential and are not exchanged between the parties; therefore, the court deducts 1.0

hour for the 8/-/11 entry in which Mr. Dickerson allotted 1.0 hour to review defendant's ENE statement. The total deduction for these entries is 4.2 hours.

m) *Miscellaneous entries for Administrative Tasks, Review of Court Records, Preparation of Standard Notices, Subpoena Review, and Preparation of Stipulations (4/29/11, 5/24/11, 6/8/11, 6/7/11, 6/28/11, 7/21/11, 8/1/11, 8/8/11, 9/26/11, 10/19/11, 11/08/11, 4/4/12, 6/12/12, 7/11/12, 7/18/12, 7/18/12, and 10/15/12):*

This miscellaneous category consists of seventeen entries totaling 5.0 hours, in which Mr. Dickerson has allocated between 0.2 hours (twelve minutes) to 0.5 hours (thirty minutes) for review of minute orders, deposition notices and defense subpoenas, as well as preparation of standard stipulations. The court allocates 0.1 hour (six minutes) to each of these entries and reduces the hours in this category from 5.0 hours to 1.7 hours, for a reduction of 3.3 hours.

The court finds that the deductions noted above constitute time that was not reasonably expended in this litigation or was not properly supported by Mr. Dickerson's billing summary. The court deducts 39.1 hours from plaintiff's requested 224.1 hours, and finds that the number of hours reasonably expended in this litigation was 185 hours.

## ii. Reasonable Hourly Rate

Once the court sets the number of reasonable hours, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Schwarz v. Secretary of Health & Human Services,* 73 F.3d 895, 906 (9th Cir. 1995) (citing *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *amended,* 808 F.2d 1373 (9th Cir. 1987)). The district court should calculate the attorney's reasonable hourly rate "according to the prevailing market rates in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 895 (1984), which is typically the community "in which the district court sits." *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir. 1991), *cert. denied,* 502 U.S. 899 (1991).

Mr. Dickerson contends that "a reasonable hourly rate in this State for federal court litigation of this magnitude is $450 per hour for someone at my current level of experience" (Decl. of Jeffrey A. Dickerson, #77, p. 13-14). Mr. Dickerson specifically relies on three *Kerr* factors in support of this hourly rate: (1) his customary fee; (2) his experience, reputation and ability; and (3) awards in similar cases.

Mr. Dickerson characterizes his reputation in Nevada as "excellent" (#77, p. 2), and offers the following summary:

1. Mr. Dickerson passed the Washington bar in 1985 and worked for an A.V.-rated litigator in Spokane, Washington, where he assisted with several trials, some of them complex.

2. Mr. Dickerson clerked for United States District Judge Bruce R. Thompson in the United States District Court for the District of Nevada.

3. Mr. Dickerson then went into private practice in Reno with a series of well-respected trial lawyers for about five years before opening his own law firm. For a period of time, he worked closely with a highly regarded trial lawyer, who mentored Mr. Dickerson in trial practice.

4. Since 1996, Mr. Dickerson has specialized in Section 1983 civil rights litigation and employment litigation with some personal injury and commercial litigation work. He estimates that eighty percent of his federal practice concerns employment law work, and that fifteen percent concerns Section 1983 civil rights litigation.

5. Mr. Dickerson has tried over twenty-five cases, several in this court. He has handled many administrative proceedings concerning state and federal civil service, as well as numerous appeals for the Nevada Supreme Court and the Ninth Circuit. In addition, he has prepared three petitions for certiorari to the United States Supreme Court.

6. This court has awarded Mr. Dickerson attorney's fees at hourly rates of $300 in 2005 and $350 in 2008. In these cases, Mr. Dickerson's clients were awarded $209,000.00 and $240,000.00 respectively.

(#77, pp. 11-13; #77, p. 3). Mr. Dickerson also provides the declaration of Ian Silverberg, Esq., who attests that he has known Mr. Dickerson since 1993 and believes him to be "one of the most

knowledgeable and skilled civil rights litigators in Nevada, and has that reputation" (Decl. of Ian Silverberg, #77-1, p. 1).

Defendant concedes that Mr. Dickerson has amassed years of employment law and trial experience, but asserts that $450.00 is not a reasonable hourly rate according to the prevailing market rates in Reno. Defendant's counsel states that she has had many cases with Mr. Dickerson as opposing counsel, and is aware that he generally utilizes a blended fee arrangement in which a plaintiff pays a set amount (usually $5,000) and any recovery is subject to a contingency fee (#81-1, ¶ 8). Thus, defendant's counsel argues that Mr. Dickerson and Ian Silverberg's contention that $450.00 is a reasonable hourly rate for Mr. Dickerson's services has no basis in reality. *Id.* Defendant's counsel states that she has been practicing employment law in Reno for thirteen years, and that a rate of $450.00 per hour—even for an experienced employment law attorney—is excessive. *Id.* Defendant's counsel states that her hourly rate in this matter was $295.00. *Id.*

Although Mr. Dickerson certainly has achieved successful verdicts in this case and others in federal court, Mr. Dickerson omits critical information from his declaration regarding his reputation and experience. In *Hussein v. Nevada System of Higher Education, et. al.*, No. 3:04-cv-00455-JCM-GWF, the District Court held Mr. Dickerson and his client, Dr. Hussein, in contempt of court for violating an injunction that prohibited Mr. Dickerson and Dr. Hussein from filing future lawsuits against the defendants, as they had already filed eleven (#563, p. 9). Notwithstanding the injunction, Mr. Dickerson filed two new lawsuits on behalf of Dr. Hussein. The District Court found Mr. Dickerson's conduct to be willful, and in addition to holding him and Dr. Hussein in contempt of court, ordered that they jointly and severally pay defendants the sum of $25,516.50 in attorney's fees and costs to enforce the injunction. *Id.*

At the conclusion of the *Hussein* case, the District Court also awarded the defendants' attorney's fees against Mr. Dickerson and Dr. Hussein in the amount of $1,142,403.25, less the court's earlier award of contempt sanctions (#833, p. 33).  Pursuant to 28 U.S.C. § 1927, the District Court found that Mr. Dickerson acted recklessly and unreasonably, that he signed every vexatious pleading, motion, opposition and reply, and that he "unnecessarily drove up the defense fees in this case."  *Id.* at 22-23.   Despite the court's repeated admonitions, Mr. Dickerson ignored these warnings that his bad-faith conduct might well result in a fee award to the defendants. *Id.* at 28.

More recently, Mr. Dickerson was the defendant in a suit filed by a former client in *Quiroz v. Dickerson*, No. 3:10-cv-00657-LRH-WGC.  Mr. Quiroz alleged that Mr. Dickerson absconded with client and third-party settlement trust funds by failing to pay plaintiff by use of deception and co-client manipulation motivated by attorney profit, thereby causing Mr. Quiroz to suffer collateral damages and breach of trust (#95, p. 2).  In December 2012, the case was tried before a jury and Mr. Quiroz represented himself in *pro se*.  The jury found in Mr. Quiroz's favor, as follows:

1. The jury awarded Mr. Quiroz the sum of $224,914.00 in compensatory damages for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and negligence;

2. The jury found that these compensatory damages were caused by defalcation committed by Mr. Dickerson;

3. The jury awarded Mr. Quiroz damages for pain and suffering in the amount of $100,000.00; and

4. The jury awarded Mr. Quiroz punitive damages in the amount of $125,000.00.

(#134).  The total jury verdict against Mr. Dickerson was $449,914.00.  *Id.*

The sanctions imposed against Mr. Dickerson in the *Hussein* case and the verdict entered against him in the *Quiroz* case seriously undermine Mr. Dickerson's characterization of his reputation.  Apart from this consideration, the court finds that an hourly rate of $450.00 is excessive

for the preparation and trial of this case.  Taking into consideration Mr. Dickerson's reputation and experience, the reasonable hourly rate according to prevailing market rates in Reno, the nature of the services provided and the subject matter of the litigation, the court finds that a reasonable hourly rate for Mr. Dickerson's legal services in this case is $275.00.  *See e.g., Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998) (reducing counsel's hourly rate).

Multiplying the number of hours reasonably expended in this litigation (185 hours) by a reasonable hourly rate of $275.00, this equals a lodestar amount of $50,875.00.

### b.  Step Two

The next step is to decide whether to increase or reduce the lodestar amount based upon the *Kerr* factors not already included in the initial lodestar calculation.  *Fischer*, 214 F.3d at 1119 (referring to *Kerr*, 525 F.2d at 70).  The court finds that the following *Kerr* factors are the relevant subsections of LR 54-16(b)(3) in this case:

> (A) The results obtained and the amount involved;
> (C) The novelty and difficulty of the questions involved;
> (D) The skill requisite to perform the legal service properly; and

### i.  The results obtained and the amount involved (LR 54-16(b)(3)(A)):

The most critical factor in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436)). The results obtained are of particular importance where, as here, the plaintiff is the prevailing party "even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434.  In this situation, two additional questions must be answered: "First, did the plaintiff fail to prevail on the claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award?" *Id.*  The court finds that plaintiff's claims were based upon a common core of facts and

related legal theories.  Thus, the court's focus is on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

In other words, if the plaintiff obtained "excellent results," full compensation may be appropriate. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 435-37).  However, if the plaintiff achieved only partial or limited success, the lodestar figure may result in an excessive award. *Hensley*, 461 U.S. at 436.  In that instance, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Id.* at 440; *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (an attorney's fee award must be adjusted downward where the plaintiff has obtained limited success, and the result does not confer a meaningful public benefit).  Such decisions are within the district court's discretion. *Thorne*, 802 F.2d at 1141.

Plaintiff alleges that he obtained an excellent result, as the jury awarded a substantial amount of punitive damages (over 9,000 times the compensatory award), and that he still received 100 times the compensatory award on remittitur (#77, p. 2).  Defendant argues that plaintiff's requested fee award is not reasonable given that plaintiff sought $4,974,000.00 in damages, but obtained a judgment of only $5,451.08 (#81, p. 3).  Defendant suggests that an award of reasonable attorney's fees, if any, would be under $15,000.00. *Id.* at 10.

On October 29, 2008, while plaintiff was incarcerated, he submitted a charge of discrimination to the Nevada Equal Rights Commission (#81-2, pp. 7-12).[3]  In the remedy request, plaintiff claimed $640,000.00 in lost salary based on a twenty-year career, $60,000.00 in lost bonuses, $84,000.00 in lost medical benefits, and $250,000.00 for pain and suffering for a total request of $1,034,000.00. *Id.* at 10.

---

[3] Plaintiff attested that he quit his job with Jack-in-the-Box "for the sake of my sanity and health." *Id.* at 9.  Plaintiff did not disclose that he was incarcerated, and thus, could not have continued to work at Jack-in-the-Box in any event. *Id.*

In plaintiff's initial disclosures, under "Calculation of Damages," plaintiff stated:

> Plaintiff intends to seek pecuniary loss to include wage loss which will be calculated based upon Plaintiff's wage while working at the Defendant, ($32,000.00) per year, which is accumulating from date of discharge of October 14, 2008, benefits while working at the Defendant, calculated into the past from date of termination and into the future for work-life expectancy, with inflationary factors, cost of living factors, and discount rate applied to reach present value. Plaintiff seeks non-pecuniary loss in the form of the damages described in the complaint. Those damages have not yet been calculated.

(#81-2, p. 4).

Prior to trial, defendant successfully moved for summary judgment on the issue of plaintiff's wage loss, with the court finding that plaintiff was not entitled to either back pay or front pay as a matter of law (#29, pp. 6, 11).

At trial, plaintiff sought compensatory damages for medical costs in the amount of $53.98 (#71, p. 148), damages for pain and suffering in the amount of $250,000.00 (#81-2, p. 16), and punitive damages in the amount of $4,000,000.00. *Id.*

The court finds that plaintiff requested $724,000.00 in lost wages (lost salary of $32,000.00 per year for twenty years plus lost medical benefits of $4,200.00 per year for twenty years), $250,000.00 in emotional distress damages, and $4,000,000.00 in punitive damages—for a total request of $4,974,000.00.[4] However, plaintiff obtained a judgment of only $5,451.08.

The court finds that plaintiff achieved extremely limited success in this litigation in relation to the amount sought. Plaintiff asked for an award of $4,974,000.00 in damages, yet only obtained a judgment of $5,451.08. However, plaintiff argues that because the jury awarded him $500,000.00 in punitive damages, the court should base plaintiff's "extent of success" on that figure. This is not the proper measure of plaintiff's success in this lawsuit. *See McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) (because the plaintiff's punitive damages award was

---

[4] This is a conservative estimate which does not consider plaintiff's request for $60,000.00 in lost bonuses.

vacated, his "extent of success" dropped from $234,000.00 to $34,000.00.   "Lawyers might reasonably spend $148,000 worth of time to win $234,000.  But no reasonable person would pay lawyers $148,000 to win $34,000 . . . The district court must reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success.").

The court finds it would be unreasonable to award plaintiff attorney's fees in the lodestar amount of $50,875.00.  *See McCown v. City of Fontana*, 550 F.3d 1097, 1104-05 (9th Cir. 2008) (reversing attorney's fee award of $200,000.00 and remanding with instructions that award must be "adjusted downward" to account for the plaintiff's limited success); *Harris v. Marhoefer*, 24 F.3d 16, 17 & 19 (9th Cir. 1994) (court properly awarded $35,087.50 despite a fee request of $120,810.00, as plaintiff achieved limited success when he obtained a $25,000.00 judgment rather than the $5,000,000.00 sought); *Corder v. Brown*, 25 F.3d 833, 836-37 (9th Cir. 1994) (reversing district court's award of $240,695.00 in attorney's fees, as court abused its discretion in awarding full attorney's fees given plaintiffs' limited success—plaintiffs only recovered $24,006.00 out of the $1,000,000.00 originally sought).  This factor weighs in favor of defendant.

### ii.        The Novelty and Difficulty of the Questions Involved (LR 54-16(b)(3)(C)):

Plaintiff alleges that in general, cases brought pursuant to 42 U.S.C. § 2000e-2 require skill and experience; and that in this case, trial skills were important to effective representation (#77, p. 2).  The court notes that this was a Title VII employment discrimination case brought by a single plaintiff against a single defendant.  The case concerned alleged discrimination over a six-month term of employment at a fast food restaurant, and it did not involve any novel or complicated issues of fact or law.  This factor weighs in favor of defendant.

### iii.   The Skill Requisite to Perform the Legal Service Properly:

The court agrees that Mr. Dickerson possesses the requisite skill to take this standard employment discrimination case to trial.  This factor weighs in favor of plaintiff.

## III.  CONCLUSION

The court concludes that the limited results plaintiff obtained in comparison to the amount he sought warrants a significant reduction of the lodestar amount.  Defendant contends that a reasonable fee award for this case is under $15,000.00.  Plaintiff did not file a reply to rebut this contention, and on balance, the other *Kerr* factors do not support a different result.  Based on the adjusted lodestar amount of $50,875.00, as well as the *Kerr* factors, plaintiff is awarded $15,000.00 in attorney's fees.

**IT IS THEREFORE ORDERED** that defendant shall reimburse plaintiff for fees in the amount of $15,000.00.


**DATED:** July 25, 2013.


_Valerie P. Cooke_

**UNITED STATES MAGISTRATE JUDGE**